MORGAN, LEWIS & BOCKIUS LLP
Kent M. Roger (SBN 95987)
kent.roger@morganlewis.com
Minna. Lo Naranjo (SBN 259005)
minna.naranjo@morganlewis.com
One Market, Spear Street Tower
San Francisco, California 94105
Tel:   (415) 442-1000
Fax:   (415) 442-1001

*Attorneys for Defendant Equilon Enterprises
LLC (d/b/a Shell Oil Products US)*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERSIAN GULF INC., | Case No. 3:15-cv-01749-TWR-AGS |
| Plaintiff, | **CLASS ACTION** |
| vs. | **DEFENDANT EQUILON ENTERPRISES LLC'S (D/B/A/ SHELL OIL PRODUCTS US) OPPOSITION TO PLAINTIFF PERSIAN GULF INC.'S MOTION FOR FURTHER SANCTIONS** |
| BP WEST COAST PRODUCTS LLC, et al. | |
| Defendants. | |
| RICHARD BARTLETT, et al., | Lead Case No. 18-cv-01374-TWR-AGS (consolidated with No. 18-cv-01377-TWR-AGS) |
| Plaintiffs, | |
| vs. | Date:       September 2, 2021 |
| BP WEST COAST PRODUCTS LLC, et al. | Time:       4:00 pm. |
| Defendants. | Courtroom: 5C |
| | Judge:      Hon. Andrew G. Schopler |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS
SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

1

2

3

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................... 1

II.   STATEMENT OF FACTS .................................................................. 3

     A.    A Kavalinas Phone #3 is Subsumed Within the Original
          Sanctions Order ...................................................................... 3

     B.    The Motion Falsely Claims That Shell Misrepresented or
          Concealed Information Regarding Traders' Phones........................... 5

        1.    Shell Never Misrepresented or Concealed the Number of
             Phones Shell Issued to Kavalinas ............................................. 5

        2.    Shell Never Misrepresented That It was "Testing" a
             Second Kavalinas Phone ......................................................... 9

     C.    Plaintiffs' "Newly" Revealed Information Are from Chats
          Produced in May 2020 ......................................................... 10

     D.    Discovery Pursued By Plaintiffs and Their Briefings Show Text
          Messages Are Not "Heart of the Case" or "Highly Probative"
          Evidence of a Conspiracy ..................................................... 11

III. LEGAL STANDARD ...................................................................... 13

     A.    Plaintiffs Misstate the Duty to Preserve ............................. 13

     B.    Threshold Requirements of Rule 37(e)................................. 14

     C.    Scope of Sanctions Available Under Rule 37(e) ................. 14

IV. ARGUMENT ................................................................................... 14

     A.    Plaintiffs Fail to Show That Shell Acted with the Intent to
          Deprive Plaintiffs of Information As Required for an Adverse
          Inference Remedy Under Fed. R. Civ. P. 37(e)(2) ........................... 16

     B.    Plaintiffs' Proposed Adverse Inference and Alternative
          Remedies are Improper ......................................................... 24

V.   CONCLUSION ................................................................................ 25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Akiona v. United States*
    938 F.2d 158 (9th Cir. 1991) ................................................................. 16

*Colonies Partners, L.P. v. Cnty. of San Bernardino*
    2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) ....................................... 17

*CrossFit, Inc., v. Nat'l Strength and Conditioning Assoc.*
    No. 14-cv-1191 JLS (KSC), 2019 WL 6527951 (S.D. Cal. Dec. 4, 2019) ........ 17

*First Fin.. Sec., Inc. v. Freedom Equity Grp., LLC*
    No. 15-CV-1893, 2016 WL 5870218 (N.D. Cal. Oct. 7, 2016) ......................... 22

*Hugler v. Sw. Fuel Mgmt., Inc.*
    No. 16-CV-4547, 2017 WL 8941163 (C.D. Cal. May 2, 2017) ........................ 25

*O'Berry v. Turner*
    No. 7:15-CV-00064, 2016 WL 1700403 (M.D. Ga. Apr. 27, 2016) ........... 22, 23

*WeRide Corp. v. Kun Huang*
    2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) ...................................... 23

**OTHER AUTHORITIES**

Fed. R. Civ. P. 37(e) ....................................................... 14, 16, 22, 23, 25

Fed. R. Civ. P. 26 ................................................................... 13, 25

# I.   **INTRODUCTION**

Shell has produced a massive volume of discovery in this case, including more than 300,000 documents, nearly 1.4 million pages and 50,000 native files. For its traders alone, Shell has produced hundreds of thousands of pages of documents and hundreds of thousands of lines of ICE chat messages.  However, despite Shell's best efforts, it was unable to locate a few of its traders' cell phones during the discovery period.  In January 2021, Plaintiffs filed a motion seeking adverse inference sanctions (ECF No. 566-1, "First Motion"), arguing that Shell had intentionally failed to preserve the data on these trader phones.  The Court denied Plaintiffs' requested relief, finding that Shell had ***not*** intentionally failed to preserve this data, but was negligent in not having preserved the phones or backed up their contents.  Shell was ordered (and has since paid) a portion of Plaintiffs' fees and barred Shell from using text messages in its defense in this case.  ECF Nos.[1] 591; 599 ("3/16/2021 Hg. Tr.") at 37:13-38:14.

Within days of the Court's sanctions order, Shell located two of the three lost phones issued to its traders Mike Kavalinas and Jeff Marino that were raised in Plaintiffs' First Motion, immediately notified Plaintiffs, and produced their texts to Plaintiffs as quickly as possible.  Shell and the other Defendants then agreed to allow Plaintiffs to address the text messages in a supplement to Plaintiffs' summary judgment opposition.[2]

Now—in a last desperate act as the hearing on Defendants' summary

---

[1] All ECF references herein are to the docket for Persian Gulf Inc. v. BP West Coast Products LLC, et al., No. 3:15-cv-01749-TWR-AGS.

[2] Plaintiffs' Supplement to their summary judgment motion insinuates that "Shell *claims* to have recently discovered these devices only after it was sanctioned…." ECF No. 707 at 1.  Nonsense.  Shell produced the texts after the ruling because it did not discover the phones in a storeroom until after the ruling.  And as to Marino's found messages, Plaintiffs complimented: "Marino's production appears to be consistent with the time frame when he was trading West Coast gasoline…. We thanked you for this production which to us, appears to be complete at this time . . . ."  Suppl. Hartley Decl., Ex. C at 8.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS
SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

judgment motions draws near—Plaintiffs have filed a Motion for Further Sanctions (ECF No. 756-1, "New Motion") against Shell.  This New Motion is simply a repeat of Plaintiffs' First Motion on sanctions.  Plaintiffs point to another cell phone issued to Kavalinas that they claim to have recently discovered evidence of, and because Shell is unable to find it and did not back up its contents, Plaintiffs move for an adverse inference.  But Plaintiffs' prior motion sought sanctions against Shell for the same conduct: what Plaintiffs' described as a failure to "preserve text messages relevant to this litigation" and "prevent the destruction of relevant evidence."  The Court found that the Shell policies and practices that led to this outcome simply were not intentional attempts to destroy evidence.  That ruling applies equally to the additional phone Plaintiffs now raise (as well as any other phones that may be discovered)[3]— the Court already found Shell's policies and practices to be inadequate; any loss because of those policies are ***negligent (not intentional)***.  There are no new facts here, or new legal questions; Plaintiffs' New Motion is little more than a (baseless) motion for reconsideration in disguise.

Attempting to distract from these basic facts, Plaintiffs claim that Shell concealed the existence of the phone from them, but this is simply false.  Indeed, the documents cited in Plaintiffs' New Motion themselves reveal the truth:

---

[3] On August 17, Shell was informed by its forensics vendor that a phone it had found appears to be the Kavalinas March 2018 "Phone #3".  Suppl. Graney Decl. ¶¶ 4, 5.  On August 18, the day before this filing the vendor reported that this phone was first set up and used in mid-March 2018.  Suppl. Roger Decl. ¶ 9.  Shell is processing that phone as of this writing and will produce its responsive texts as quickly as possible and report to the Court.  Shell immediately informed Plaintiffs of this development and asked them for an extension of the deadline for this brief so that Shell could extract and produce the messages, potentially mooting the issue.  Plaintiffs refused.  Suppl. Roger Decl. ¶ 10.  Their choice to consume judicial resources with an issue that could be fully resolved between the parties with a little more time is revealing:  Plaintiffs have never used a single text message in any of their briefing or expert reports, and thus they appear to be more concerned with flinging mud and trying to raise suspicions than actually obtaining them.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS
SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

1  Kavalinas testified at deposition that he used a Shell-issued phone for business, and

2  neither Shell nor Kavalinas has denied the existence (or asserted the non-existence)

3  of a third phone (or even said how many phones Kavalinas had).  Nor is it correct

4  that Plaintiffs only recently discovered this additional phone—in reality, this

5  "discovery" is based on documents produced by Shell in *November 2019*, months

6  before they deposed Kavalinas, and refreshed in May 2020, months before

7  Plaintiffs' brought their First Motion.  Plaintiffs had all the information they needed

8  to raise this additional phone in that motion.  But even if they had, the result would

9  have been the same: Shell's policies were negligent, not intentional, regardless of

10  whether they led to a failure to preserve two phones or three.

11      Plaintiffs also repeatedly describe trader text messages as going to the "heart

12  of the case," but Plaintiffs' actions tell a different story.  Plaintiffs did not cite a

13  single text message in their opposition to Defendants' summary judgment motions,

14  or their expert reports, despite having thousands of them.  And after Shell produced

15  text messages from the two phones it has been able to locate, Plaintiffs cited only

16  *four* in their Summary Judgment Supplement, saying only that "other Defendant

17  traders appear" in them.

18      In sum, Plaintiffs' hyperbole aside, there is no basis for any sanctions here.

19  This Court has already imposed penalties on Shell for its policies and practices that

20  led to a failure to preserve the content of trader cell phones.  There is no basis to

21  impose further sanctions simply because Plaintiffs have identified another cell

22  phone that suffered the same fate, much less for the Court to reconsider its prior

23  finding that such conduct cannot be the basis for an adverse inference.

24  **II.    STATEMENT OF FACTS**

25      **A.    A Kavalinas Phone #3 is Subsumed Within the Original Sanctions
            Order**

26  The New Motion charges that Shell revealed the existence of a Kavalinas

27  Phone #3 only after Plaintiffs brought their original sanctions motion.  We debunk

28

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

3

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS

SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

that in the next section.  But, whether a third phone existed or not is inconsequential to this New Motion because the Court sanctioned Shell on March 16 for its "policy [] to image the phones or back them up [only] once a custodian identified them as having relevant information".  *I.e.,* the Court sanctioned Shell for not backing up all relevant traders' phones.  Hg. Tr. 20:9-11. *id.,* 21:3-6 ("And by the way, Shell did not back up those phones.  That's one of the reasons I think the Court found tentatively that Shell had a duty and didn't execute it properly.")  And so, the Court ruled that "the failure to back up the phones was unreasonable . . .." *Id.,* 21:9-10.  Whether Plaintiffs believed at the time of their First Motion that they had not received texts from two or from three Kavalinas phones is immaterial; a third Kavalinas phone is subsumed within the Court's ruling that Shell had a duty to back up Kavalinas's and Marino's phones.

That a Kavalinas Phone #3 is a revelation to Plaintiffs since this Court's original order and thus requires the Court's reconsideration now is nonsense.  The First Motion's Hartley Declaration concedes that Plaintiffs knew from the time of the conclusion of the Shell depositions, resulting from their review of Shell's produced ICE chats before they brought their First Motion, that they had not received *any* texts from *any* Shell traders' phones.  First Motion at 3; Roger (3/2/2021) Decl. (ECF No. 582-1), ¶ 11.  (Likewise, Hartley (1/19/2021) Decl., Exh. E (ECF No. 566-7), Plaintiffs' August 20, 2020 meet and confer letter, also *predating their first motion* by five months, notes: "Shell traders regularly provided their Shell issued mobile device numbers to the other Defendants and California market participants via *ICE and Yahoo chats* . . . (Michael Kavalinas providing [] his cell phone number in messages with external parties in *chats*.))"  Moreover, on March 12, 2020, long before their First Motion, Plaintiffs deposed Kavalinas about his ICE chats for 56 pages, over ninety minutes of a seven-hour deposition.  Suppl. Roger Decl. Ex. A (Kavalinas Dep. Tr.) at 269-325.

Plaintiffs take credit in their First Motion for their "dogged" detective work

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS
SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

in discovering the existence and absence of trader phones and texts but do not explain why they did not raise a Kavalinas Phone #3 there.  Only in their June 23, 2021 meet and confer letter do Plaintiffs for the first time reference a March 2018 Kavalinas Phone #3, citing to ICE chats that they already had months before their First Motion: "according to information available to us, it appears Kavalinas was issued this third device in March 2018.  Specifically, Kavalinas wrote in a chat dated March 13, 2018, that he was in Houston with a 'shiny new Shell iphone.'" (SOPUS_PGI_01361352, row 294801)."  Suppl. Hartley Decl., Ex. C at 5.  The cited SOPUS_PGI document and row are the very *same Shell ICE chats relied on by Plaintiffs in their First Motion*.  An unaccounted for Kavalinas Phone #3 is no different from his Phone # 1, still lost in the water.  It does not support Plaintiffs' disguised motion for reconsideration.  Particularly now, when Shell has a potential Phone #3 in hand and is undertaking to produce the relevant texts.  Suppl. Roger Decl., ¶ 10.

**B.**   **The Motion Falsely Claims That Shell Misrepresented or Concealed Information Regarding Traders' Phones**

**1.**   **Shell Never Misrepresented or Concealed the Number of Phones Shell Issued to Kavalinas**

In order to elevate the "old news" of a Kavalinas Phone #3 to a matter of Shell's intent to deprive, the New Motion tees up a list of easily debunked charges.  First, it accuses Kavalinas of denying that he used a business-issued phone for business.  Contrary to Plaintiffs' accusation, Kavalinas testified to his business use of his Shell phone in response to their deposition questions: "Q. Do you have a company-issued mobile device?  A. Yes. . . . Q. And what about voice mails?  Did—do you save any voice mails you receive as part of your employment with Shell, either on your company phone or your --  you said you don't use your *personal* phone for *business, so just your Shell-issued mobile device,* did you—do you have any voice mails preserved on that?  A. No."  Suppl. Roger Decl., Ex. A

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS
SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

(Kavalinas Dep. Tr.) at 18:2-4, 19:2-8.[4]  The Court already expressly ruled Shell negligent for not backing up Kavalinas's Shell-issued phones.  Hg. Tr. 20:9-14, 21:9-10. A Kavalinas Phone #3 is no different.

Next, the New Motion repeats at least ten times that Shell "consistently represented" and made "repeated representations" that Kavalinas had only two Shell-issued phones and "actively concealed" and "denied" the existence of other devices from Plaintiffs.  False.  Plaintiffs' *First Motion*, brought on the phone he dropped in the water and the broken one he turned in to Shell, but did not accuse Shell of representing that Kavalinas ever had only two Shell phones, nothing of the kind.  As acknowledged in Plaintiffs' First Motion, "Shell informed Plaintiffs that [Kavalinas] had two unfortunate incidences of lost data."  Original Mot. at 5.  But, Shell has consistently represented that it *knew* of two instances of lost Kavalinas phones data, based on Kavalinas's *memory*.  *See* Kavalinas (3/1/2021) Decl. (ECF No. 582-5), ¶¶ 4, 5 ("I *recall* that while on a dock, I accidentally dropped my phone into the water." "I *recall* another incident when my mobile device stopped working.")

Plaintiffs' New Motion cites two sources to support its new charge.  New Mot. at 8.  The first, Exhibit F, is Plaintiffs' own September 11, 2020 letter sponsored by Suppl. Hartley Decl. ¶ 11, which says nothing about the number of devices Kavalinas was issued one way or the other.  The second is Hartley Decl., ¶ 16, which asserts for the first time that "Beginning September 2020, Shell represented to Plaintiffs that Kavalinas was only issued two company devices during the entire Relevant Time Period, both of which were the subject of separate incidences of lost data." This Declaration, objectionable for lack of foundation, does not identify "who" for Shell "represented" this, or on what and how many

---

[4] Plaintiffs fail to include this relevant testimony, seizing only on their incomplete listing in a later question of "electronic forms of communication" that omitted the business phone Kavalinas had just testified to, thereby misrepresenting his actual testimony.  *See* Hartley (1/19/2021) Decl., Ex. C (ECF No. 566-3).

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

6

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS
SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

occasions.  Counsel for Shell affirmatively reject this accusation.  Suppl. Roger Decl. ¶ 3; Naranjo Decl., ¶ 3.  And here again Plaintiffs' own letter to Shell counsel belies Plaintiffs' accusation of any Shell denial: "Plaintiffs asked *whether* you were aware Kavalinas was issued this third device . . .. [I]t *appears* Kavalinas was issued this third device in March 2018. . . . Please *confirm whether* you were aware that Shell had a third phone for Kavalinas  . . .."  Suppl. Hartley Decl., Ex. C at 5.

Shell's actual representations have been consistent:  While Shell's records indicated that Kavalinas was issued iPhones as company-issued devices during the relevant time period, they neither indicate how many, nor details relating to whereabouts or any loss of those devices.  *See* Graney (3/1/2021) Decl. (ECF No. 582-3), ¶¶ 3, 4 ("Based on Shell's records, I determined that Mike Kavalinas and Steve Rodrick were issued iPhones as their company issued-devices during the time frames identified to me as periods for which Mike Kavalinas and Steve Rodrick were west coast gasoline traders.").

Piling on to their foundationless assertion of intent-to-deprive, the New Motion accuses Shell even today of denying the existence of a third Kavalinas phone and (again) of not having backed it up.  New Mot. at 8-9.  It cites nothing in support of that *ipse dixit*.  Shell did tell Plaintiffs that "[o]ther than the phone that Kavalinas dropped into the water and the phone that was recently located, and from which messages were produced to you, Shell is *aware* of only one other phone issued by it to Kavalinas, in 2019."  New Mot. at 9 (citing Suppl. Hartley Decl. (ECF No.756-2), Ex. E).  That is not a denial of anything.  It is a continued acknowledgement of the incompleteness of Shell's records, already addressed by the Court's finding of "negligence, or at worst gross negligence" in its Order on the First Motion.  3/16/2021 Hg. Tr. 15:1-4.  After countless hours during the first round of meet and confers and First Motion briefing during which Shell attempted to identify records of Kavalinas's Shell-issued devices, Shell provided what imperfect information it had.  *See, e.g.,* Graney (3/1/2021) Decl. (ECF No. 582-3),

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS
SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

¶¶ 3, 4.  The New Motion professes exasperation and finds intent to conceal because, during a June 23 40-minute call, Shell's counsel could not answer in real time Plaintiffs' dozens of technical questions shot at them without prior notice about dozens of topics, including the "extraction" from Kavalinas' recently found phone, gaps in the messages, Shell's litigation department's organizational structure, and chain of custody records.  But, Shell's only advance clue as to the subject of this ambush was that Plaintiffs had "questions regarding the timelines of messages produced, among other things."  Suppl. Hartley Decl. (ECF No. 756-2), Ex. D.[5]  The Motion also expresses irritation that Shell appeared to have fewer records related to the Kavalinas device than the also incomplete records about its trader Marino's phone, which Shell also located shortly after the first sanctions hearing and about which it promptly notified Plaintiffs.  New Mot. at 4.  But Shell's lack of clear chain of custody records is not new information that supports a new accusation of intent to deprive; Shell's incomplete records, which in the Court's view would have been mitigated by backing up the phones, were considered and adjudicated by the Court's Order on the First Motion.

Plaintiffs also appear frustrated that Shell took time to respond to its request for confirmation regarding Shell's preservation of text messages on Kavalinas's Phone #3.  New Mot. at 8-9.  Aside from the fact that Shell told Plaintiffs numerous times that it was unaware of a Phone #3 or any phones other than the dropped phone, the found phone, and a phone it issued to Kavalinas in 2019, Shell took the time to examine the 2019 phone, issued after the Relevant Time Period, for any relevant messages.  On July 8, Shell responded to Plaintiffs that "Shell is aware of

---

[5] The Motion's exasperation also is posturing, as was the seriousness with which Plaintiffs initiated and conducted the oral meet and confer.  *The same day* of the call they delivered a nine-page single spaced letter which they had already prepared, asking the dozens of questions with which they had orally peppered Shell counsel and which they could not have expected outside counsel to have answered on the fly.  Suppl. Hartley Decl. (ECF No. 756-2), Ex. C. Why not send Shell their letter in advance to foster a good faith meet and confer?

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS
SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

only one other phone issued by it to Kavalinas, in 2019….and determined that it contained no messages from the discovery relevant time period.  Nevertheless, Shell will preserve the contents of that phone."  Suppl. Hartley Decl. (ECF No. 756-2), Ex. E at 5.  The new facts in Plaintiffs' *de facto* motion for reconsideration are that since the Court's ruling, Shell has found and produced the Kavalinas and Marino text messages from the phones that were the subject of the Original Motion, Shell believes it has discovered Phone #3 and is endeavoring to produce its text messages as quickly as possible.  These new facts do not support any intent to deprive, only Shell's good faith.

## 2.  Shell Never Misrepresented That It was "Testing" a Second Kavalinas Phone

In its consistent pattern of repeated accusations to substitute for proof of any intent to deprive, the New Motion accuses that Shell claimed to have been "testing" Kavalinas' phone in October 2020, but then quickly admitted it had not actually located the phone in the first place. New Mot. at 5, 18, 19.  As with their other false accusations, Plaintiffs' representations to the Court in their First Motion betray them here as well.

The New Motion baldly charges that "Shell initially told Plaintiffs that it was testing this device for processing and production back in October 2020.  ([Suppl.] Hartley Decl. at ¶ 12, Ex. G at 2-3).  Then the following month, in November 2020, Shell admitted, in response to a direct question, that this device in fact had not yet been located. *Id.,* at ¶ 13."  New Mot. at 5.  False.  Cited Exhibit G does not say that Shell "was testing" any device.  It says that "Shell *needed to* test the device" (*Id.,* Ex. G).  Meaning if the device was found, it would need to be processed to determine if text messages even if existed on the device.  *That is exactly what the original Hartley declaration represented* to the Court in Plaintiffs' First Motion: Shell "[c]ounsel was unable to provide any dates for when either of these events [of loss] occurred and informed Plaintiffs that Shell ***was in the process of tracking***

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS
SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

*down* Mr. Kavalinas's last phone *to* determine *whether it can be* processed for production. It was never found and Shell failed to back up either device before it was lost.  Hartley [1/19/2021] Decl. at ¶ 3, Ex. A at 2-3."  First Mot. at 5-6.  Thus, the original Hartley Declaration belies the current Hartley declaration.

The quoted Hartley Decl., Ex. A from the First Motion is the *same* November 10, 2020 meet and confer letter as Suppl. Hartley Decl., Ex. G from the New Motion.  But Plaintiffs only now say the *same* document supports their falsity that Shell "initially" told Plaintiffs it "was testing" Kavalinas' second phone for processing and production in October 2020 only to "admit" the following month that in fact that phone had not yet been located.  New Mot. at 5.  Plaintiffs told the truth the first time: Shell never told them that it had located Kavalinas' second phone and was testing it.  To what end?  Only to have to 'fess up' shortly after that it could not locate it in the first place?  Suppl. Roger Decl. ¶ 4; Naranjo Decl., ¶ 4.  The truth Plaintiffs told the first time – and by common-sense – was that Shell was looking for a phone that Kavalinas had reported he had returned to Shell after it had stopped working.  *See* Kavalinas (3/1/2021) Decl. (ECF No. 582-5), ¶ 5.  That phone was never found in advance of the First Motion.  *See* Suppl. Roger Decl., ¶ 4.  And, when it was found, Shell immediately notified Plaintiffs and it was produced.  *See* Suppl. Hartley Decl. (ECF No. 756-2), ¶ 2, Ex. A.  Regardless, the truth about "testing" adds nothing to the Court's ruling on the First Motion.  It only exposes the Plaintiffs' lack of candor when requesting this Court's reconsideration on a matter already decided.

### C.    Plaintiffs' "Newly" Revealed Information Are from Chats Produced in May 2020.

The New Motion identifies gaps in the newly produced Kavalinas text messages based on his chat messages.  New Mot. at 6-7.  Plaintiffs have had those chat messages since May 2020, prior to and relied on in their original sanctions motion.  First Mot. at 2-3, 17.  Plaintiffs would have understood that Kavalinas had

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS
SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

likely texted for the entire period of time that he was a west coast gasoline trader. The Court has already sanctioned Shell for failing to preserve and produce any Kavalinas text messages in the First Motion.  And, no new information supports an intent by Shell to deprive Plaintiffs of these text messages.  Suppl. Kavalinas Decl., ¶ 2 (explaining no intentional deletion and no knowledge of why text messages may be missing).  Indeed, the new information shows the opposite:  Plaintiffs are now in possession of Kavalinas and Marino text messages that Shell was previously sanctioned for not producing.

### D.  Discovery Pursued By Plaintiffs and Their Briefings Show Text Messages Are Not "Heart of the Case" or "Highly Probative" Evidence of a Conspiracy

In ruling that Shell should be penalized for negligently not having backed up its traders' phones, the Court found prejudice to Plaintiffs in their inability to use traders' text messages to attempt to make their case.  Not satisfied with an award of attorneys' fees (already paid) and Shell's inability to use trader text messages in its defense (3/16/2021 Hg. Tr. 39:19-40:3), Plaintiffs take another run at adverse inferences.  They fail.

Plaintiffs spent years directing their discovery to the refinery level conspiracy claims they actually pleaded but have never sought a single *text* from a single refinery employee.  They likewise expressed no interest in traders' text messages until five months after the close of fact discovery, and then only Shell's.  As this Court recognized at the March 16, 2021 sanctions hearing, "trader information was not the focus of the case and it's certainly not the focus of discovery."  3/16/2021 Hg. Tr. 37:19-20.  And Plaintiffs have never sought any texts of any of the other seven Defendants in their newly asserted trader conspiracy, other than from one Tesoro trader.

During the original sanctions hearing the Court was concerned about Plaintiffs' contention that they would be deprived the use of what they repeatedly *called* (as they do here) "heart of the case" messages to use in their "expert reports

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS
SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

1   and in all future briefings to the Court".  3/16/2021 Hg. Tr. 15:20-23.  But in their

2   *now-filed summary judgment motions and expert reports, Plaintiffs did not offer a*

3   *single text* of the Shell or Tesoro traders whose texts they did have at the time,

4   none.  Soon after, Plaintiffs received the texts from the two misplaced Marino and

5   Kavalinas phones and Defendants stipulated to and the Court granted Plaintiffs the

6   opportunity to supplement their Motion for Summary Judgment specifically to offer

7   the new texts as evidence of a conspiracy.  ECF No. 704.  But even with the

8   opportunity to supplement, Plaintiffs merely cite to just four text messages, in a

9   footnote, observing only that "other Defendant traders *appear*" in them.  Plaintiffs

10  make no attempt to link any of the four messages to their new trader conspiracy or

11  to any impact on price; no discussion, no analysis.  ECF No. 707 at 2 n.2.

12  Plaintiffs' attempt in this New Motion to assert the "highly probative" value of

13  "missing" text messages amounts to a feeble description that produced text

14  messages "relate to the purchase or sale of CARBOB gasoline" "exchange

15  agreements", "bids and offers in the marketplace generally for west coast product"

16  and other instances of "conducting business".  New Mot. at 10.  It is no surprise

17  that text messages are absent from Plaintiffs' summary judgment motion briefs and

18  expert reports.  Despite that Shell has now produced text messages from all of its

19  west coast gasoline traders and now only a subset of text messages from Kavalinas

20  are missing,[6] Plaintiffs still cannot link trader communications to any alleged (not-

21  pleaded) conspiracy.

22        The New Motion's particular interest in Kavalinas's text messages is

23  puzzling as well.  While it asserts – seven separate times – that Kavalinas is the

---

[6] The First Motion related to the text messages of Steve Rodrick, Jeff Marino and Mike Kavalinas.  ECF No. 566-1.  Plaintiffs abandoned their motion as to Rodrick. ECF No. 582 at Section I.  And, Plaintiffs do not have any issue with the Jeff Marino text message production.  *See* Suppl. Hartley Decl. (ECF No. 756-2), Ex. C at 8 ("Marino's production appears to be consistent with the time frame when he was trading West Coast gasoline….  We thanked you for this production which to us, appears to be complete at this time…").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS

SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

"longest serving West Coast gasoline trader during the Relevant Period"[7] the Motion fails to mention in this context that Kavalinas's tenure began in early 2016, well after Plaintiffs' alleged 2012 and 2015 price spikes and "suspicious" refinery outages.  *See* Persian Gulf Complaint, ECF No. 76.

Yes, the Court originally found prejudice supporting sanctions for *negligence*.  That finding, whether borne out by subsequent events, certainly does not support the New Motion's claim of intent.

## III.   LEGAL STANDARD

### A.   Plaintiffs Misstate the Duty to Preserve

Plaintiffs again offer their own erroneous Rule 26(f) standard: "Parties must use best efforts to preserve electronic information."  New Mot. at 11.  As the Court acknowledged, "a litigant is under a duty to preserve evidence which it ***knows*** or ***reasonably should know*** is relevant to the action."  3/16/2021 Hg. Tr. 8:19-23 (citing *Cottle-Banks v. Cox Communications, Inc.*, No. 10-cv-2133-GPC-WVG,

---

[7] He's not.  The relevant time period for this case is January 2011 through August 2018.  Kavalinas was a west coast gasoline trader only from early 2016 – February, according to a chat the Motion cites-- through the end of the relevant time period, i.e., 2 years, 7 months.  Jeff Marino was a west coast gasoline trader from the beginning of the relevant time period through July 2013 and then again from March 2017 through the end of the relevant time period, i.e., 3 years, 11 months.  Marino (3/1/2021) Decl. (ECF No. 582-4) ¶ 1.  And, Steve Rodrick was a west coast gasoline trader between March 2014 through June 2016, i.e., 2 years, 3 months.  Suppl. Roger Decl., ¶ 8, Ex. E.  The Motion's throwaway ding that Kavalinas misled Plaintiffs about the start of his tenure at his deposition, prejudicing them, is nonsense.  That he testified from memory, adopting Plaintiffs' leading question that he added the west coast to his trading portfolio in "beginning middle of 2016", is of no moment.  Suppl. Roger Decl., Ex. A (Kavalinas Dep. Tr.) at 24:19-22.  At the same deposition, Plaintiffs examined him for ten pages and ten minutes about a *March* 15, 2016 email produced by Shell between Kavalinas and other Shell traders about west coast gasoline.  *Id.*, Ex. A at 87:12-96:2; *id.*, Ex. B.  And Shell has produced Kavalinas's documents, including emails and ICE chats, from January 2016.  *See* Suppl. Hartley Decl. (ECF No. 756-2), Ex. E at 9 n.1; Ex. B (identifying chat excerpts dated February 2016); Suppl. Roger Decl., ¶ 7, Exs, C, D (confirming that Shell produced documents and emails from Kavalinas with dates as early as January 4, 2016 and ICE chats dated also as early as January 4, 2016).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS
SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

2013 WL 2244333, at *13 (S.D. Cal. May 21, 2013)).  The Federal Rules do not require parties to a litigation to preserve "every shred of paper, every e-mail or electronic document, and every backup tape."  *See Javo Beverage Co. v. California Extraction Ventures*, Inc., No. 19-CV-1859-CAB-WVG, 2020 WL 2062146, at *10 (S.D. Cal. Apr. 29, 2020); Fed. R. Civ. P. 37(e) advisory committee's note (2015) ("Due to the ever-increasing volume of electronically stored information and the multitude of devices that generate such information, perfection in preserving all relevant [ESI] is often impossible.").

### B.    Threshold Requirements of Rule 37(e)

To qualify for relief under Rule 37(e), Plaintiff's burden is to establish each of the following threshold elements: (1) the ESI "should have been preserved in the anticipation or conduct of litigation"; (2) the party "failed to take reasonable steps to preserve it"; and (3) the ESI is "lost" and "cannot be restored or replaced through additional discovery".  Fed. R. Civ. P. 37(e); *see* 3/16/2021 Hg. Tr. 8:12-18.

### C.    Scope of Sanctions Available Under Rule 37(e)

An adverse inference is a remedy under Rule 37(e) only where there is a "finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2); *see* 3/16/2021 Hg. Tr. 13:19-24.  Otherwise, no adverse instruction is permitted, and the Court is authorized to award lesser sanctions, such as monetary sanctions, only "upon finding prejudice to another party from loss of the information." Fed. R. Civ. P. 37(e)(1); *see* 3/16/2021 Hg. Tr. 14:1-5.

## IV.    ARGUMENT

This Court sanctioned Shell for text messages that were "lost and cannot be recovered under Rule 37." 3/16/2021 Hg. Tr. 13:14-16.  As the remedy to cure prejudice from Shell's "negligence, or at worst gross negligence", the Court ordered and Shell paid Plaintiffs' two-thirds of Plaintiffs' motion fees and barred Shell from

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS
SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

using trader text messages in its defense.  3/16/2021 Hg. Tr. 15:2-4; 39:19-40:3.[8]

But Plaintiffs' New Motion now seeks *intentional* spoliation sanctions even now that Shell has found and produced messages that the Court previously ruled were "lost and cannot be recovered".  And after Plaintiffs chose not to cite a single text in their summary judgment motion and were afforded an opportunity to supplement it with the newfound texts but referenced only four, in their supplement's footnote, the present motion makes no sense.  It seeks the harshest of remedies, adverse inferences, which the Court was unwilling to grant when the text messages were thought lost but now are found.

The New Motion is premised on a fabrication that Shell had concealed the existence of a third Kavalinas phone.  But Plaintiffs could have discovered that there was a third Kavalinas phone *before* Shell found the second Kavalinas phone, and even *before* their First Motion.  As cited in their June 23, 2021 meet and confer letter, Plaintiffs state: "[A]ccording to information available to us, it appears Kavalinas was issued this third device in March 2018.  Specifically, Kavalinas wrote in a chat dated March 13, 2018, that he was in Houston with a 'shiny new Shell iphone.' (SOPUS_PGI_01361352, row 294801)."  Supp. Hartley Decl. (ECF No. 756-2), Ex. C at 5.  *That cited document is the ICE chats produced by Shell in*

---

[8] To "mitigate the prejudice here" the Court "agree[d] with the defense that this [a supposed trader conspiracy] was not the main focus of the discovery until much later. That doesn't excuse the defense's failure to preserve this evidence, but I think it factors into the analysis of how much prejudice there is here and the culpability of the defense." 3/16/2021 Hg. Tr. 39:13-18.  Plaintiffs' complaints alleged that California gasoline *refiners* conspired to manipulate the California-grade gasoline price by restricting output through coordinated refinery outages, falsely reported supplies, and exports of unprecedented volumes of gasoline. PG Compl., ¶¶ 6, 11; IPP Compl., ¶¶ 4-9.  There were no allegations that gasoline traders directly fixed the price or limit the supply of gasoline, and it wasn't until September 2019 – nearing the end of fact discovery – when Plaintiffs propounded document requests that requested trader communications at all.  And, even in that request, trader text messages were never mentioned let alone called for. Plaintiffs raised the issue of text messages for the first time in their August 2020 letter, nine months after Shell had completed its document productions.  Hartley (1/19/2021) Decl., Ex. E (ECF No. 566-7).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS
SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

*May 2020 and relied on by Plaintiffs in their First Motion.*[9]

The Rule 37(e)(2) remedy requires that a "party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2).  In the words of this Court, such a finding would require "that the party ***purposefully*** destroyed evidence to ***avoid*** its litigation obligations."  3/16/2021 Hg. Tr. 14:9-11 (emphasis added).  An unaccounted for Kavalinas Phone #3, whose existence could have been known by Plaintiffs before their first sanctions motion is no different from his Phone #1 (lost in the water) or Phone #2 (once lost but now found).  A third Kavalinas phone was unaccounted for due to the same insufficient preservation and backup protocols that the Court found to be negligent when it ruled on the First Motion.  Apart from that objective fact, Plaintiffs provide no evidence or basis for even their conjecture of an *intentional* spoliation of that device.  And now, with Shell's immediate disclosure of potential Kavalinas Phone #3 and its undertaking to produce its texts as rapidly as possible, there can be no question of Shell's good faith.

### A.  Plaintiffs Fail to Show That Shell Acted with the Intent to Deprive Plaintiffs of Information As Required for an Adverse Inference Remedy Under Fed. R. Civ. P. 37(e)(2)

To impose any of the more serious "specific sanctions" under Rule 37(e)(2)'s "intent to deprive" element, Plaintiffs must prove that Shell acted willfully. *See, e.g.*, *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) (declining to impose an adverse-inference sanction because nothing in the record indicated that the litigant intentionally destroyed records "with the intent of covering up

---

[9] In their first motion Plaintiffs already took credit for 'discovering' Shell trader phones after they deposed Shell witnesses, including Kavalinas, in the first half of 2020 and long before they brought their first sanctions motion in January *2021*: "Following the depositions of Shell's witnesses, a search of the chat logs produced in this litigation against the phone numbers provided by Shell's traders during their depositions revealed that these were indeed the same phone numbers Shell's traders were providing to external parties in communications surrounding the purchase and sale of CARBOB, among other relevant items." First Mot. at 3.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS
SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

information"); *CrossFit, Inc., v. Nat'l Strength and Conditioning Assoc.*, No. 14-cv-1191 JLS (KSC), 2019 WL 6527951, at *11, (S.D. Cal. Dec. 4, 2019) (finding an intent to deprive only after employees deleted over 33,000 presumptively relevant documents during the four years defendant did not have a hold notice in place); *Colonies Partners, L.P. v. Cnty. of San Bernardino*, 2020 WL 1496444, at *10 (C.D. Cal. Feb. 27, 2020) (finding an intent to deprive only after the employee continued to affirmatively delete text messages that pertained to the litigation and deleted his email account after the litigation commenced).

As this Court recognized in the March 2021 sanctions hearing: "***Conduct that is merely negligent or even grossly negligent is insufficient to show intent.***" 3/16/2021 Hg. Tr. 14:14-16 (citing Fed. R. Civ. P. 37 advisory committee's note (2015) (emphasis added)).

As shown, Plaintiffs have not distinguished a Kavalinas Phone #3 from his water-dropped Phone #1 or now found Phone #2 (or from the Marino found phone) to support any showing or inference of intentional spoliation as to a Kavalinas Phone #3. The Motion supposes to provide a list of "facts" laying out "the intent element justifying an adverse inference." Mot. 19. Instead, the list is a convenient summary of the New Motion's debunked over-the-top accusations and *ipse dixit* conclusions:

***Plaintiffs' Claim No. 1*****:** Shell denied the existence entirely of Kavalinas Phone #3, a Shell-issued iPhone used by its West Coast gasoline trader during the Relevant Period.

***Shell's Response:*** *FALSE. See, supra,* at pp. 4-7. Shell represented that it knew of two instances of *lost* Kavalinas phones data, based on Kavalinas's recollection. Plaintiffs' First Motion did not accuse Shell of representing that Kavalinas ever had only two Shell phones. Plaintiffs' First Motion acknowledged, "Shell informed Plaintiffs that [Kavalinas] had two unfortunate incidences of lost data." First Mot. at 5. Shell's records do not indicate how many devices existed,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS

SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

nor details relating to any loss of those devices.  Shell never denied the existence of a third Kavalinas phone; Shell told Plaintiffs that "[o]ther than the phone that Kavalinas dropped into the water and the phone that was recently located, and from which messages were produced to you, Shell is *aware* of only one other phone issued by it to Kavalinas, in 2019."

**Plaintiffs' Claim No. 2:**  Shell refused to engage in any meaningful discussion with Plaintiffs about locating and producing that device following their discovery of its existence.

**Shell's Response:** *FALSE.  See, supra,* at pp. 8-9.  On June 17, 2021, Plaintiffs requested Shell counsel's availability to discuss Shell's production of messages from the found Marino and Kavalinas phones noting only that Plaintiffs had "questions regarding the timelines for messages produced, among other things", which Plaintiffs never specified.  During their June 23 call for nearly 40 minutes Plaintiffs orally read a list of questions that Shell counsel was not prepared to answer.  The same day Plaintiffs followed that call with a nine-page single spaced letter demanding answers to the dozens of questions they asked during the call.  Why not send that letter in advance?  Shell responded to Plaintiffs on July 9, 2021 providing the information known to it.  Suppl. Hartley Decl. (ECF No. 756-2), Ex. E at 8-10.

**Plaintiffs' Claim No. 3:**  Shell refused for almost two weeks to confirm whether it intended to take any steps to preserve messages on Kavalinas Phone #3 device, which it ultimately refused to do as it denies its existence.

**Shell's Response:** *FALSE.  See, supra*, at pp. 8-9.  Shell was unaware of but does not deny the existence of a third Kavalinas phone.  And Shell was unable to preserve its messages, because Shell did not know its location.  In response to Plaintiffs' July 6 request for confirmation that Shell would preserve messages on Kavalinas's "third/*other*" devices (Suppl. Hartley Decl., Ex. E at 3), Shell responded that it would preserve the only Kavalinas phone that it was aware of that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS

SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

had not yet been produced: a phone issued to Kavalinas in 2019, after the relevant discovery time period. Suppl. Hartley Decl., Ex. E at 3; Mot. at 9. That phone was searched and no messages from the relevant time period were found. Nonetheless, Shell confirmed it would preserve the contents of that 2019 phone. Suppl. Hartley Decl., Ex. E, p. 5. And now, with Shell's most recent discovery of a Kavalinas Phone #3 and its undertaking to produce its texts as rapidly as possible, there can be no question of Shell's good faith.

***Plaintiffs' Claim No. 4:*** Shell refused to provide basic information regarding the circumstances surrounding the whereabouts and/or chain of custody of Kavalinas Phone #2 during the time it was purportedly lost.

***Shell's Response:*** *FALSE.* On July 9, Shell explained that the Kavalinas and Marino "phones were discovered when a stockroom manager was transferring equipment locked in a storeroom and attempted to track the equipment being transferred. They were in a collection of phones and were manually identified." Suppl. Hartley Decl., (ECF No. 756-2), Ex. E at 9.

***Plaintiffs' Claim No. 5:*** Shell refused to account for the months and months of deleted text messages from that device once it was mysteriously found.

***Shell's Response:*** *FALSE.* Shell refutes Plaintiffs' unsupported assertion that these text messages were deleted but does not have an explanation for the gaps in the text messages. Kavalinas declares under penalty of perjury that "I did not intentionally delete text messages related to my role as a west coast gasoline trader from any mobile device that Shell issued to me. I also have no knowledge whether or not any text messages related to my role as west coast gasoline trader were deleted or are otherwise missing from any such Shell-issued mobile device. If any text messages are missing from a mobile device that Shell issued to me, I am unaware of any explanation for how that would have occurred." Suppl. Kavalinas Decl. ¶ 2.

***Plaintiffs' Claim No. 6:*** Shell told Plaintiffs it was testing Kavalinas Phone

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS
SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

#2 only to later admit to Plaintiffs it was not even in Shell's possession.

**Shell's Response:** *FALSE. See, supra,* at pp. 9-10. Plaintiffs' First Motion and accompanying Hartley Declaration clearly explained: Shell "[c]ounsel was unable to provide any dates for when either of these events [of loss] occurred and informed Plaintiffs that Shell was in the process of tracking down Mr. Kavalinas's last phone to determine whether it can be processed for production. It was never found and Shell failed to back up either device before it was lost. Hartley [1/19/2021] Decl. at ¶ 3, Ex. A at 2-3." First Motion (Dkt. 566-1) at 5-6. Shell did not find that Kavalinas phone until March 2021, and immediately notified Plaintiffs on March 18 that it was found. Suppl. Hartley Decl. (ECF No. 756-2), Ex. A; Ex. E at 8.

**<u>Plaintiffs' Claim No. 7</u>:** Shell repeatedly represented it had produced all relevant mobile device data in its possession when it had not.

**Shell's Response:** *FALSE. See, infra*, at pp. 1-2. Shell continues to represent that it has produced all known relevant text messages in its possession. Shell immediately notified Plaintiffs when it located Mike Kavalinas's and Jeff Marino's devices in March 2021 shortly following the sanctions hearing on those very same phones. Suppl. Hartley Decl. (ECF No. 756-2), Ex. A; Ex. E at 8. And, most recently, Shell immediately disclosed its discovery of a Kavalinas Phone #3 and is undertaking to produce the text messages from that found phone as quickly as possible. *See,* p. 2, n.3, *supra.* That is good faith not intent to deprive.

**<u>Plaintiffs' Claim No. 8</u>:** Shell traders falsely claimed that text messages, even those on their Shell-issued devices were not used for work.

**Shell's Response:** *FALSE. See, supra,* at pp. 5-6. Plaintiffs ignore Kavalinas's deposition testimony that he did use a business-issued phone for business. Suppl. Roger Decl., Ex. A (Kavalinas Dep. Tr.) at 18:2-4, 19:28. And Shell has now produced text messages from every one of its west coast gasoline traders.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS

SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

***Plaintiffs' Claim No. 9:***  Shell maintained business records of when other custodians relinquished Shell-issued devices, but not for its longest serving West Coast gasoline trader, Kavalinas.

***Shell's Response:*** *FALSE.  See, supra,* at pp. 5-6.  During the Relevant Time Period, Shell did not maintain records containing a complete history of every mobile device that Shell issued to its trader employees.  After reviewing available records, Shell was able to piece together certain information relating to trader mobile devices, but that record is not complete.  Shell in good faith shared all information that it had available. Graney (3/1/2021) Decl. ¶¶ 3, 4 (ECF No. 582-3).

***Plaintiffs' Claim No. 10:***  Shell and its custodian, Mr. Kavalinas, misrepresented the time period he occupied the role of West Coast gasoline trader.

***Shell's Response:*** *FALSE.  See, supra,* at 13, n. 7.  While Kavalinas testified from memory and adopted Plaintiffs' leading question that he began trading for the west coast region "beginning middle of 2016" (Suppl. Roger Decl., Ex. A (Kavalinas Dep. Tr.) at 24:19-22), Plaintiffs were never "denied the chance to question him" about the earlier 2016 time period.  New Mot. at 17.  For example, at his deposition Plaintiffs examined him about a March 15, 2016 email produced by Shell.  Suppl. Roger Decl., Ex. A (Kavalinas Depo. Tr.) at 87:12-96:2; *id.,* Ex. B.  And, Shell has produced Kavalinas's documents, including emails and ICE chats, from January 2016.  *See* Suppl. Hartley Decl. (ECF No. 756-2), Ex. E at 9 n.1; *id.,* Ex. B (identifying chat excerpts dated February 2016); Suppl. Roger Decl., ¶ 7, Exs. C, D (confirming dates of Kavalinas document production as early as January 4, 2016 and ICE chat production also as early as January 4, 2016).

Tellingly, Plaintiffs disregard the best evidence of the absence of Shell's intent to deprive:  Even after the Court found Shell had been negligent in its preservation of Kavalinas's and Marino's devices, and after Shell shortly thereafter unexpectedly located the phones when a stockroom manager discovered them in a collection of phones when transferring equipment, Shell immediately alerted

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS
SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

Plaintiffs of the found phones and spent significant time and resources to have their phones imaged and messages produced to Plaintiffs.  *See* Suppl. Hartley Decl. (ECF No. 756-2), Ex. E at 9.  Plaintiffs complimented Shell: "Marino's production appears to be consistent with the time frame when he was trading West Coast gasoline….  We thanked you for this production which to us, appears to be complete at this time….")  Suppl. Hartley Decl. (ECF No. 756-2), Ex. C at 8. Plaintiffs do not accuse Shell of intentionally withholding the *Marino* phone and intentionally producing *its* messages only after Shell was sanctioned and ordered to pay fees.  Intent to deprive *would have been* sitting on the phones after their discovery and never producing them, the opposite of Shell's conduct here.

*Before* Shell found the misplaced phones the Court found that "[a]lthough it was possible for Shell to do more to preserve the text messages, there is *no* evidence to suggest the conduct here is anything more than negligence, or at worst gross negligence.  Thus, Rule 37(e)(2)'s harsh sanctions are not appropriate." 3/16/2021 Hg. Tr. 14:25-15:4. The circumstance that **has** changed since that hearing is that **now Plaintiffs have in hand** the messages from the two previously misplaced phones.

The facts in the three cases Plaintiffs cite in their New Motion are inapposite because, as demonstrated, each of the "facts" Plaintiffs offer up here have been debunked.  (1) In *First Financial Security,* the defendant conceded that the texts were in fact deleted but that the deletions were "innocent" mistakes because there was an agreement in place that the principals "should not communicate electronically regarding possible claims."  *First Fin.. Sec., Inc. v. Freedom Equity Grp., LLC,* No. 15-CV-1893, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016). The court found that this explicit agreement to avoid communicating electronically suggested a shared intent to keep incriminating facts out of evidence.  *Id.*  No such agreement, implicit or otherwise, and no concession that text messages were in fact deleted is present here. (2) As to *O'Berry v. Turner*, Plaintiffs merely seize on a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS

SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

single soundbite conclusion and fail to compare any of the egregious facts of that case:  defendant in that case had no document preservation policy for a driver log containing key records relating to the accident at issue; and defendant's employee had printed, and eventually lost, a single paper copy of the information.  *O'Berry v. Turner,* No. 7:15-CV-00064, 2016 WL 1700403, at *4 (M.D. Ga. Apr. 27, 2016).  The log was central to that case.  Here, contrary to Plaintiffs' say-so mantra, text messages are not central to this case, as Plaintiffs have demonstrated by not citing to a single one in their motion for summary judgment or their experts' reports.  (3)  Lastly, in *WeRide Corp.,* the Court issued terminating sanctions against the spoliating party after it was found that he wiped his computer and returned it to an Apple Store the same day that he received a cease-and-desist letter and because he had deleted and altered materials central to the litigation even after the Court issued a preliminary injunction that specifically prohibited parties from destroying or concealing documentation related to the case.  *WeRide Corp. v. Kun Huang,* 2020 WL 1967209 (N.D. Cal. Apr. 24, 2020), at *15.  Here too, Plaintiffs do not try to compare those facts to ours. The cited cases are meaningless against the facts here.

Shell's discovery of and its responsible production from the two misplaced phones that were the subject of the original sanctions motion, as well as *Plaintiffs' belated* realization regarding a "Phone #3" referenced in ICE chats they had and said they'd reviewed long before their original motion, are not new facts.  They do not alter the Court's earlier finding of negligence, not intent to deprive under Rule 37(e)(2).  The requested adverse inference should be denied.

Beyond the factual inaccuracy in Plaintiffs' proposed adverse inference statement as to Kavalinas' tenure (see p. 13, n.7), Plaintiffs now also reverse course from the relief they sought their Original Motion and now seek Shell's preclusion "from offering as evidence or impeachment at summary judgment or trial ***written communications relevant to the litigation***"  New Mot. at 20.  This sweeping request supposedly is necessary because "[t]ext messages produced by Shell in this

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS

SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

litigation contain no exculpatory communications such that sanctions at trial…would cure the prejudice to Plaintiffs." *Id.* at 20-21.  This is non-sensical. After the Court's Order, Plaintiffs offered no assertedly *inculpatory* texts either in their summary judgment motion or experts' reports.  That was their choice.  But here again, Plaintiffs are late; after Shell alerted Plaintiffs to the found phones, Defendants, including Shell, already filed their oppositions to Plaintiffs' summary judgment motions, without any objection by Plaintiffs of the kind they seek now. Do Plaintiffs now want Defendants' summary judgment opposition stricken?  After Shell's production of the found texts, *Plaintiffs requested* and Defendants stipulated to Plaintiffs' supplementing their summary judgment motion specifically as to those found texts *and to "Defendants [including Shell] submitting a response directly related to same".*  ECF No. 704.  Plaintiffs *now* want to reverse course from court-entered stipulations and fully briefed dispositive motions to preclude Shell from any documentary defense?  Plaintiffs have no principled position here.  They are making it up as they go.

## B.  Plaintiffs' Proposed Adverse Inference and Alternative Remedies Are Improper

Plaintiffs also propose three alternatives to an adverse inference; all should be denied.  First, Plaintiffs request that the Court permit Plaintiffs to submit any question of intent "at trial for the jury", citing *Stevens.*  New Mot. at 21.  For the forgoing reasons there is no question of intent here.  While *Stevens* notes a procedure whereby the partie*s* may present evidence to a jury, here Plaintiffs seek an order allowing only *Plaintiffs* to present evidence while impermissibly seeking to deny Shell the ability to present a defense or argument. There is no basis for Plaintiffs' concocted remedy to allow a one-sided presentation of arguments at trial.

Plaintiffs' second alternative remedy concedes a finding by this Court of the *absence* of an intent to deprive, but, relying on *Nuvasive, Inc.,* impermissibly proposes again that only *Plaintiffs* be allowed to present evidence to the jury of "a

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS
SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

1  failure to preserve ESI" and its likely relevance.

2      And, as a capper, Plaintiffs then seek the *additional* relief "prohibit[ing]

3  Shell from presenting ***any*** argument or ***defense*** that Plaintiffs ***could have***

4  ***potentially*** defeated" had Kavalinas preserved his text messages.  This proposed

5  relief is untethered to Rule 37(e) and goes even beyond the severe Rule 37(e)(2)

6  relief Plaintiffs are not entitled to.  Plaintiffs rely on *Hugler,* which discusses a Rule

7  37***(c)*** remedy for insufficient Rule 26(a) initial disclosures and for a Rule 26(e)

8  failure to supplement an incorrect or incorrect discovery response.  *Hugler v. Sw.*

9  *Fuel Mgmt., Inc.,* No. 16-CV-4547, 2017 WL 8941163, at *11 (C.D. Cal. May 2,

10  2017).  The court denied the requested relief finding the complained of conduct was

11  not one of those.  *Id.,* *11-12.  Here too.  Moreover, Plaintiffs fail to explain how

12  the Court or they could apply a "could have potentially defeated" standard they

13  invent.[10]

14      Shell of course also objects to Plaintiffs' request for attorneys' fees, given

15  that the issue of these text messages had already been litigated and Shell has

16  already compensated Plaintiffs for the first round of sanctions briefing pursuant to

17  this Court's Order on the same text messages subject this motion.  Shell should

18  be entitled to its fees in defending Plaintiffs' baseless New Motion.  Short of that,

19  surely Plaintiffs should be admonished for their overreach and unduly wasting of

20  the Court's time and the parties' resources.

## V.    **CONCLUSION**

22      For the foregoing reasons, the Court should deny Plaintiff's motion.

---

[10] Shell joins the non-Shell Defendants' concurrent Opposition demonstrating the impropriety of adverse inferences as a discovery sanction in cases where blameless parties would be prejudiced, for the reasons stated therein.  ECF No. 762.

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

25

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS
SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  August 19, 2021

MORGAN, LEWIS & BOCKIUS LLP
KENT M. ROGER
MINNA LO NARANJO


By:   *s/ Kent M. Roger*
                 Kent M. Roger

*Counsel for Defendant Equilon Enterprises LLC
(d/b/a Shell Oil Products US)*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26

3:15-cv-01749-TWR-AGS
3:18-cv-01374-TWR-AGS
SHELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR FURTHER SANCTIONS